IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| MICHAEL FOURNIER DIXON, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | Civil Action No. 4:18-CV-1007-O |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| | § | |
| Respondent. | § | |

**OPINION AND ORDER**

Before the Court is a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 filed by Petitioner, Michael Fournier Dixon, a state prisoner confined in the Correctional Institutions Division of the Texas Department of Criminal Justice (TDCJ), against Lorie Davis, director of TDCJ, Respondent. After considering the pleadings and relief sought by Petitioner, the Court has concluded that the petition should be denied.

**I. BACKGROUND**

On April 6, 2016, pursuant to plea agreements, Petitioner entered guilty pleas in the Criminal District Court No. 3, Tarrant County, Texas, Case Nos. 1414520D (possession with intent to deliver a controlled substance, cocaine, 4-200 grams), 1414521D (possession with intent to deliver a controlled substance, heroin, 4-200), 1414523D (tampering with evidence), and 1414789D (evading arrest/detention with a vehicle, a deadly weapon), and pleas of true to the repeat-offender and deadly-weapon allegations in the indictments in exchange for the state's recommendation of concurrent 15-

year sentences in all four cases.[1] Petitioner did not appeal his convictions but did challenge his convictions in four state habeas-corpus applications, one for each conviction, which were denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court.

## II. ISSUES

In this federal petition, Petitioner raises two grounds for relief, wherein he claims his trial counsel was ineffective in various respects. Pet. 6, ECF No. 1.

## III. RULE 5 STATEMENT

Respondent believes that the petition is neither barred by the statute of limitations nor the successive-petition bar and that Petitioner has sufficiently exhausted his state court remedies as to the claims presented. Resp't's Answer 5, ECF No. 14.

## IV. STANDARD OF REVIEW

A § 2254 habeas petition is governed by the heightened standard of review provided for by the Anti-Terrorism and Effective Death Penalty Act (AEDPA). 28 U.S.C. § 2254. Under the Act, a writ of habeas corpus should be granted only if a state court arrives at a decision that is contrary to or an unreasonable application of clearly established federal law as determined by the United States Supreme Court or that is based on an unreasonable determination of the facts in light of the record before the state court. *Harrington v. Richter,* 562 U.S. 86, 100-01 (2011); 28 U.S.C. § 2254(d)(1)-(2). Additionally, the statute requires that federal courts give great deference to a state court's factual findings. *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct.

---

[1] On the same date in the same court, Petitioner also pleaded guilty in Case No. 1414522 pursuant to a plea agrement to posession of marijuana and was sentenced to 15 years confinement. Petitioner does not challenge that conviction in this petition. Pet. 2, ECF No. 1.

It is the petitioner's burden to rebut the presumption of correctness through clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## V. DISCUSSION

Petitioner's claims are multifarious and addressed as thoroughly as practical. They are construed to allege that counsel's representation was deficient during all critical stages of trial and more specifically as follows:

(1) counsel misled him by indicating that he could not challenge the state's "inclusion," or the validity, of the deadly-weapon findings unless he proceeded to trial;

(2) counsel failed to conduct a reasonable investigation of the facts and law pertaining to the deadly-weapon findings and their "inclusions" based on Texas Code of Criminal Procedure article 42.12 and Texas Penal Code § 1.07(a)(17)(b);

(3) counsel failed to investigate his "validity challenge" to the state's deadly-weapon "inclusions";

(4) counsel erroneously advised him to accept all four of the state's plea agreements even though they included "a factually insufficient finding that [he] used his vehicle as a deadly weapon";

(5) counsel neglected to advise him on the basic elements of proof needed by the state to obtain a conviction with an affirmative deadly-weapon finding in each individual plea agreement; and

(6) counsel failed to challenge the indictment in Case No. 1414523D (tampering with evidence) and erroneously advised him to plead guilty to the offense even though the police report contained exculpatory evidence indicating that he was not guilty of the offense.

Pet. 6, ECF No. 1; Pet'r's Mem. 5-10, ECF No. 8.

By entering a knowing, intelligent, and voluntary guilty plea, a criminal defendant waives all nonjurisdictional defects in the proceedings preceding the plea, including ineffective-assistance-of-counsel claims that do not attack the voluntariness of the guilty plea. *Smith v. Estelle*, 711 F.2d

677, 682 (5th Cir. 1983); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981). A guilty plea is knowing, intelligent, and voluntary if done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Brady v. United States*, 397 U.S. 742, 748 (1970). If a challenged guilty plea is knowing, intelligent, and voluntary it will be upheld on federal habeas review. *James v. Cain*, 56 F.3d 662, 666 (5th Cir. 1995). Although a defendant's attestation of voluntariness at the time of the plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *United States v. Diaz*, 733 F.2d 371, 373-74 (5th Cir. 1979).

Petitioner was represented at trial by Glynis Adams McGinty, licensed to practice law since April 1988. He raised similar ineffective-assistance claims in his state habeas-corpus applications, and the state habeas judge, who also presided over the plea proceedings, held a hearing by affidavit, in which counsel responded to Petitioner's allegations as follows (all spelling, punctuation and/or grammatical errors are in the original):

> On September 1, 2015, I was retained by [Petitioner] to represent him . . . . Several of the cases contained a Repeat Offender Notice which raised his penalty range on them to no less than fifteen years (15) and no more than ninety-nine(99) years or life, and up to a ten thousand ($10,000.00) fine. Furthermore, the Indictments contained a Deadly Weapon Finding Notice to wit: a motor vehicle that in the manner of its use or intended use was capable of causing death or serious bodily injury.
>
> The facts that were presented to me by Mr. Dixon were as follows:
>
> On May 17, 2015 Officers were working routine patrol in the area of 5500 Fernander Dr. When that observed a white vehicle Texas License Plate #DXR5422 being driven by [Petitioner], traveling eastbound on Fernander Dr., Fort Worth, Texas. This area is known to officers as a high drug trafficking area, due to multiple complaints from community members along with numerous narcotics arrest. Officers turned eastbound and got behind the vehicle, and observed [Petitioner] slow down and then proceed through a stop sign at Hervie and Fernander. The vehicle then pulled to the stop sign at Prevost and Fernander. The vehicle turned north on the 4600 block of Prevost, without stopping completely at the stop sign, and failed to

4

signal 100 feet prior to the intersection, signaling as he began the turn at the intersection. When officers turned north behind [Petitioner]s vehicle he accelerated at a high rate of speed. Officers announced to dispatch that they were in pursuit of a vehicle traveling at a high rate of speed, and other officers in the location joined in the chase. The officers that were directly behind the [Petitioner]s vehicle attempted to catch up to him as he turned west on the 5300 block of Carver, and proceeded through multiple stop signs at high speeds without stopping or even slowing, which placed himself along with any motorist or pedestrians in danger. When [Petitioner] turned onto Carver he temporarily lost control of his vehicle, and drove through a yard on the North side of the street before regaining control. The vehicle then turned south from Carver onto the 4600 block of Bourine, and officers observed the passenger door open on [Petitioner]s vehicle which indicated to the officers that [Petitioner] had fled the vehicle to elude officers. When [Petitioner] saw the officers had caught up to him he closed the car door and continued to accelerate at a high rate of speed. The officers observed the driver door of the [car] opened several times during the pursuit. The vehicle turned from Bourine west onto the 5400 block of Fernander, and continued to accelerate. The vehicle turned from north onto the 4600 block Prevost.. As the vehicle began to driving north on Prevost, officers observed the driver's side door open, and object come out of the open driver's side door. Officer Allred informed the responding officers that the driver had thrown something from the vehicle on Prevost at Fernander.Street. The vehicle continued at a high speed, and turned west on the 5300 block of Humbert, then turned south on the 4300 block of Bourine Street..

Officers observed the vehicle slow down at the 4300 block of Bourine, and a black male driver later identified as [Petitioner], a black male, whose date of birth was 08/17/74 jumped out of the vehicle on the roadway while the vehicle was in drive. [Petitioner] began to flee on foot eastbound through the alley between 5400 Humbert, and Farnsworth. The unoccupied vehicle continued south bound on Bourine and finally came to rest in the side yard of 5437 Fernander where the vehicle broke the fence and shrubbery in the yard,. Officers exited the patrol car, and followed [Petitioner] on foot through the alley. Officer Rogers yelled several times "Stop Police" and [Petitioner] continued to run, ignoring commands from officers to stop. [Petitioner] fell several times, and attempted to hide in some bushes. Officer Rodgers caught up to [Petitioner] and ordered him to roll to his stomach and placed his hands behind his back. [Petitioner] complied and was placed in handcuffs. Officers Rodgers escorted [Petitioner] back to the patrol car and [Petitioner] informed the Officers that his vehicle ran over him when he exited the car and attempted to run from them on foot.

When officers did an inventory of [Petitioner]'s vehicle they found a closed plastic Tupperware container resting against the gas pedal of the vehicle which contained two vacuumed sealed plastic bags with cocaine in one and heroin in the

other. They also located a scale which they believed was used for weighing the controlled substance. The cocaine weight was 24.3g and the weight of the heroin was 4.275 ounces. They also found a gallon ziplock bag which contained a large amount of marijuana.

When [Petitioner] hired me on September 2, 2015, he said it was because I had represented him in the past, and he was confidant in my representation. I obtained through discovery the entire States file including police reports, lab reports, video's and still pictures. I reviewed all the evidence against [Petitioner] with him. Furthermore, [Petitioner] and I discussed the fact that their had been two recalls on the breaking system of the vehicle he was driving, however after researching the issue with the manufacturer, and in light of the facts of his case it had little to no value regarding his guilt or innocense. Each time I met with [Petitioner] in my office his main concern was getting the State to come off of the deadly weapon finding in his indictments. Each time I assured him that I was continuing to discuss this with the Assistant District Attorney, and she was not budging. The fact that he was run over by his own vehicle while attempting to flee from the police with a car full of drugs, was not one of mitigation nor did it impact the deadly weapon finding. During my negotiations with the Assistant District Attorney assigned to [Petitioner]'s cases I discussed the recall on the breaking system of [Petitioner]'s car, and although verified, it had little impact on the plea bargain negotiations or the deadly weapon finding. The State was not willing to negotiate a plea without the deadly weapon finding, which I explained to [Petitioner] throughout my representation.

I discussed [Petitioner]'s options of trial, an open plea or a plea bargain with the State. It was [Petitioner]'s sole and voluntary decision to enter into plea bargain negotiations with the State, and I proceeded accordingly. [Petitioner] was very clear that he did not want a trial under any circumstances, and that he wanted me to get him the best deal I could from the States attorney. I appeared on behalf of [Petitioner] as his case proceeded through the court management system while continuing to negotiate with the State. I repeatedly explained to [Petitioner] that if we proceeded to trial the issue of whether the vehicle was a deadly weapon or not would be presented at that time, and we could present our evidence against the State's request. However, I further explained to him that if we proceeded with a plea the State would persist in its request for a deadly weapon finding. [Petitioner]'s case was scheduled for trial in early April, 2015, and I notified [Petitioner] that we had to make a choice between trial or a plea bargain. As with most criminal cases [Petitioner] waited until the 11th hour to finally accept the last offer I was able to negotiate, 15 years in the Institutional Division of the Texas Department of Criminal Justice, which was the minimum amount of time he could receive from a Jury at trial.

On April 6, 2016 [Petitioner] and I appeared before the Court and accepted the States offer of 15 years in the Institutional Division of the Texas Department of

6

Criminal Justice in exchange for his plea of GUILTY (see Written Plea Admonishments and Trial Certifications). I discussed with [Petitioner] his rights under the Constitution, as well as, his limited rights of appeal, and after our discussions he signed each written plea admonishment and trial certification. [Petitioner] signed each of the Admonishments which contain the Deadly Weapon finding, which he was aware of as evidence by his signature. I advised [Petitioner] that we could proceed to trial if he persisted in his wanting to fight the Deadly Weapon finding and HE choose to accept the State's offer rather than proceed to a jury trial. [Petitioner] plead guilty to each of the charges, and was pronounced guilty. The Court followed the plea bargain recommendation and sentenced [Petitioner] to the agreed upon punishment of 15 years.

I performed all professional services required of me as his attorney, and additionally after he had taken his plea I (as a Muncipal Court Judge) performed his marriage ceremony.

01SHR[2] 97-100, ECF Nos. 15-8 & 15-9 (emphasis in original).

Based on counsel's affidavit, the documentary record, and his own recollection of the plea proceedings, including Petitioner's demeanor in court, the state habeas judge found that Petitioner was admonished in accordance with state law and chose to plead guilty and accept the deadly-weapon findings instead of going to trial knowing that a trial would be the only way to not have deadly-weapon findings and that there was no credible evidence that counsel's advice fell below the range of competence required of criminal defense attorneys or to overcome the presumption that Petitioner's pleas were regular.[3] *Id.* at 144-45, ECF No. 15-10. Based on its findings, and applying the *Strickland* standard and relevant state law, the court entered the following legal conclusions:

---

[2] "01SHR" refers to the record of Petitioner's state habeas proceeding in WR-87,450-01.

[3] Petitioner presented his own affidavit and the affidavit of his wife Audry Dixon in an effort to establish that during the plea colloquy he attempted to question the trial court regarding the deadly-weapon findings but was ignored. *Id.* at 70-71, ECF No. 15-8. There is no reporter's record of the plea hearing on file or any indication in the record before the Court that Petitioner ever attempted to withdraw the guilty pleas or made any objections concerning the pleas. The state habeas court impliedly found that the affidavits lacked credibility and explicitly found that if Petitioner had indicated to the court that his pleas were not freely, knowingly, or voluntarily made, the court would not have accepted the pleas. *Id.* at 146, ECF No. 15-10.

37. There is a presumption of regularity with respect to guilty pleas under Texas Code of Criminal Procedure art. 1.15.

38. Before accepting a guilty plea, the court must admonish the defendant as to the consequences of his plea, including determining whether the plea is freely, voluntarily, and knowingly given.

39. [Petitioner] was properly admonished.

40. When a defendant complains that his plea was not voluntary due to ineffective assistance of counsel, "'the voluntariness of the plea depends on (1) whether counsel's advice was within the range of competence demanded of attorneys in criminal cases and if not, (2) whether there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'"

41. "To justify a deadly weapon finding under Section 1.07(a)(17)(B), the State need not establish that the use or intended use of an implement actually caused death or serious bodily injury; only that 'the manner' in which it was either used or intended to be used was 'capable' of causing death or serious bodily injury."

42. Because [Petitioner] used his vehicle in a manner capable of causing death or serious bodily injury, the deadly weapon allegations were proper.\

43. Counsel's advice to plead true to the affirmative deadly weapon findings was proper.

44. [Petitioner] has failed to prove that he was misled by counsel.

45. [Petitioner] has failed to prove that counsel's advice fell below a range of competence demanded of attorneys in criminal cases.

46. [Petitioner] has failed to prove that he would not have pled guilty and would have insisted on going to trial but for the alleged misconduct.

47. [Petitioner] has failed to prove that his pleas were involuntary due to ineffective assistance of counsel.

48. [Petitioner] has failed to overcome the presumption that his pleas were regular.

49. [Petitioner]'s pleas were freely, voluntarily, and knowingly made.

*Id.* at 148-49 (citations omitted).

Petitioner fails to present clear and convincing evidence in rebuttal. 28 U.S.C. § 2254(e)(1). Thus, this Court must apply the presumption of correctness to the state court's findings, as well as the state court's interpretation and application of state law, on the issue. Having done so, Petitioner's claims that counsel misled him or gave him erroneous advice to get him to plead guilty are groundless. Petitioner's assertions, after the fact, are insufficient to rebut the presumption that he received effective assistance of counsel and the presumption of regularity of the state court records. *See Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974) (holding state court records "are entitled to a presumption of regularity"). It is clear from the documentary record that based on the trial court's and counsel's interaction with Petitioner, both the judge and counsel were under the opinion that Petitioner understood all the circumstances concerning his pleas and wanted to proceed with his pleas. Petitioner reinforced this belief by executing the written plea admonishments acknowledging that he was aware of the consequences of his pleas; that his pleas were knowingly, freely, and voluntarily entered; and that counsel "provided me fully effective and competent representation." Petitioner's representations during the plea proceedings "carry a strong presumption of verity," and the official records, signed by Petitioner, his counsel, and the state trial judge are entitled to a presumption of regularity and are accorded great evidentiary value. *Blackledge v. Allison,* 431 U.S. 63, 74 (1977); *Webster v. Estelle,* 505 F.2d 926, 929-30 (5th Cir. 1974).

In this case, the state would not waive the deadly-weapon allegations, which counsel discussed with Petitioner. Counsel's obligation is to inform a criminal defendant of the advantages and disadvantages of a plea agreement and the attendant statutory and constitutional rights that a guilty plea would forgo. *Libretti v. United States,* 516 U.S. 29, 50-51 (1995). Often a criminal

defendant will agree to plead guilty to an offense(s), having been so informed by counsel, in order to avoid a potentially harsher sentence by a judge or jury. Such a decision on the part of a petitioner does not render counsel's representation deficient or a plea involuntary. *See North Carolina v. Alford,* 400 U.S. 25, 37 (1970); *Brady,* 397 U.S. at 749-50.

Because Petitioner's guilty pleas were voluntarily, intelligently, and knowingly made, his remaining ineffective-assistance claims are waived.

## VI.  CONCLUSION

For the reasons discussed herein, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. Further, pursuant to 28 U.S.C. § 2253(c), for the reasons discussed herein, a certificate of appealability is **DENIED**.

**SO ORDERED** on this 25th day of September, 2019.

_____
Reed O'Connor
**UNITED STATES DISTRICT JUDGE**